```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

PATRICIA ANN RICHARDS,        )
                              )
            Plaintiff,        )
                              )
v.                            )     Case No. CIV-15-219-RAW-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Patricia Ann Richards (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 24, 1959 and was 54 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a material handler in a lumber plant, a firewatch, a cashier, and a house cleaner.

Claimant alleges an inability to work beginning March 5, 2009 due to limitations resulting from degenerative neck and back disease, carpel tunnel syndrome in both hands, problems with her shoulder, knees, and lungs, anxiety, and depression.

## Procedural History

On November 15, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 22, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Doug Gabbard, II with the Claimant appearing in Ada, Oklahoma and the ALJ presiding in McAlester, Oklahoma. The ALJ entered an unfavorable decision on November 8, 2013. The Appeals Council denied review on April 13, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform reduced light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to give the proper weight to the opinion of Claimant's treating physicians; (2) applying the Grids to Claimant's circumstance; and (3) reaching an RFC not supported by substantial evidence.

**Consideration of Treating Physicians' Opinions**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the back, obesity, left carpal tunnel syndrome, and affective and anxiety disorders. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform reduced light work. In so doing, the ALJ found Claimant was limited to work that required little or no judgment; simple duties that can be learned on the job in a short period of time; supervision which was simple, direct and concrete; only incidental interpersonal contact with supervisors and co-workers; no contact with the general public; only occasional grasping and fingering using the left non-dominant hand; avoid concentrated exposure to loud noises; sit/stand option every 10-20 minutes throughout the work day without having to leave the workstation. (Tr. 16). The ALJ found that the Medical-Vocational Guidelines ("Grids") directed a finding of non-disability. After consultation with a vocational expert, the ALJ determined Claimant could perform the representative job of conveyor line bakery worker. (Tr. 21).

5

As a result, the ALJ concluded Claimant was not disabled from March 5, 2009 through the date of the decision. Id.

Claimant first asserts the ALJ failed to provide the appropriate weight to the opinion rendered by her treating physician, Dr. G.V.N. Murty. Dr. Murty provided a mental medical source statement on August 13, 2013. He opined that Claimant was extremely limited in the functional areas of understanding and remembering simple instructions, carrying out simple instructions, the ability to make judgments on simple work-related decisions, the ability to complete a normal work day and work week without interruptions from psychologically-based symptoms, and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 401). Dr. Murty also determined Claimant was markedly limited in the areas of interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. Id.

Dr. Murty also completed a physical medical source statement. He found Claimant could occasionally and frequently lift/carry less than ten pounds, stand/walk for less than two hours in an eight hour workday, sit for a total of less than two hours in an eight

6

hour workday and must periodically alternate sitting and standing to relieve pain or discomfort. (Tr. 397). Dr. Murty stated Claimant was limited in the upper and lower extremities. She could never climb ramps, stairs, ladders, ropes, or scaffolding. She also could never balance, stoop, kneel, crouch, or crawl. Claimant was also found to be limited in reaching all directions, handling, fingering, feeling and should never crouch. (Tr. 398). Claimant was to avoid all exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. 399).

The ALJ concluded that Dr. Murty's findings of limitation were inconsistent with his own clinical findings and with Claimant's report that "she was active at home." He stated that the medical record did not support Dr. Murty's findings, including indications that medications reduced her pain to a 2 out of 10 and his treatment records that demonstrated Claimant had a normal gait and normal muscle strength. The ALJ ultimately did not accord Dr. Murty's opinion represented in the source statement any weight. (Tr. 19).

Dr. Murty began treating Claimant in 2009 for lumbar back pain and anxiety. In July of 2009, an MRI of Claimant's back indicated a broad based disc bulge, mild degenerative facet arthropathy, mild

7

central canal stenosis and mild bilateral stenosis at L3-4. At L4-5, Claimant demonstrated a broad based bulge with moderate to severe degenerative facet arthropathy, mild to moderate central canal stenosis, and bilateral lateral recess stenosis. Disc and hyptrophied facets abutted the L5 roots as they began to exit the dural sac without definite deformity. Claimant also had mild to moderate bilateral foraminal stenosis. At L5-S1, Claimant showed a combination broad based disc bulge and small to medium sized broad based central disc protrusion measuring 10 mm LR, moderate to severe degenerative facet arthropathy, moderate central canal stenosis and bilateral lateral recess stenosis, disc protrusion abutting the S1 roost bilaterally without definite deformity, and mild to moderate bilateral foraminal stenosis. (Tr. 403).

In March of 2009, Claimant rated her lower back pain at a 6 out of 10. (Tr. 408). Dr. Murty noted in February of 2011 that Claimant had a normal gait but decreased range of motion in back flexion. (Tr. 396). In April of 2013, Dr. Murty found Claimant was positive for arthralgias, back pain (chronic), and joint stiffness (knees). She was also positive for anxiety, crying spells, depression and insomnia. (Tr. 389). Claimant's gait was slowed with decreased range of motion in bilateral shoulder abduction, back flexion and extension, pain with range of motion in

bilateral shoulder abduction, lumbar with flexion and with extension. Muscle strength was normal. (Tr. 391). In May of 2013, Claimant complained to Dr. Murty of severe low back pain, most prominent in the lower lumbar spine. He found this to be a chronic problem with essentially constant pain. Aggravating factors were found to be lifting, bending over, and pushing a heavy object. She found some pain relief with narcotic pain medication. She was active in the home but unable to work. Claimant rated her pain at a 2 out of 10 with medication but a 10 out of 10 without medication. Claimant was also positive for anxiety, crying spells, depression, and insomnia. (Tr. 386). Dr. Murty noted a normal gait but pain with range of motion in the lumbar region with flexion, with extension, and lateral flexion. Muscle strength was normal. (Tr. 388).

In August of 2013, Dr. Murty reported possible adverse medication effects. With regard to Claimant's back pain, the discomfort was most prominent in the lower lumbar spine. It did not radiate. Claimant characterized her pain as severe with some relief from medication. Dr. Murty noted, however, that Claimant's gait remained slowed as was her pain with range of motion in the lumbar region. (Tr. 375-77).

Claimant was also attended by Dr. J. Gordon Gregory for pain

9

management.  Beginning in October of 2011, Claimant described her pain as a 10 out of 10 continuing October of 2012, never dropping below an 8 out of 10.  (Tr. 277-79, 324-26, 329, 357-59, 363).

On May 4, 2012, Dr. Gregory authored both mental and physical medical source statements on Claimant.  The limitation findings substantially mirrored those found by Dr. Murty.  (Tr. 317-21).  For the same reasons offered on Dr. Murty's source statement, the ALJ gave Dr. Gregory's source statement no weight. (Tr. 19).  The ALJ specifically stated Dr. Gregory's treatment notes indicated he based his treatment of pain on Claimant's subjective statements rather than objective findings.  (Tr. 18).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to

controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301

11

(quotations omitted).

The ALJ completely rejected the functional limitations found by Claimant's primary treating physicians.  He did so by citing to those entries in the treatment records which supported a finding of non-disability but ignored the significant amount of information concerning the debilitating nature of Claimant's condition.  An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).  Moreover, he did not adequately address the mental limitations found by Drs. Murty and Gregory in their assessments.  While the medical source statements are overwhelmingly limiting, the ALJ cannot engage in an wholesale rejection of the treating physicians' findings without specific justification.  On remand, the ALJ shall reassess his rejection of these reports in light of the totality of the medical record.

### RFC Assessment and Application of the Grids

Since the ALJ did not adequately consider and weigh the opinions of Claimant's treating physicians, he must reassess his RFC findings and the applicability of the Grids on remand.

### Conclusion

The decision of the Commissioner is not supported by

12

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE